**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pete Van Winkle,<br>        Petitioner,<br>v.<br>Ryan Thornell, et al.,<br>        Respondents. | No. CV-18-03290-PHX-MTL<br><br><u>DEATH PENALTY CASE</u><br><br>**ORDER** |

Before the Court is Petitioner Pete Van Winkle's contested amended motion to stay and abey this habeas case until he exhausts certain habeas claims in state court. (Docs. 126 and 132.) For the reasons below, the Court will grant the amended motion.[1]

**I.      BACKGROUND**

In 1994, in *Simmons v. South Carolina*, the United States Supreme Court held that when a capital defendant's "future dangerousness is at issue, and state law" bars the defendant's "release on parole, due process requires that the sentencing jury be informed" of that bar. 512 U.S. 154, 156 (1994) (plurality). About 15 years later, an Arizona Grand Jury charged jail inmate Van Winkle with the first-degree murder of a fellow inmate (R.O.A. 5), for which the State sought a death sentence (R.O.A. 21). *State v. VanWinkle*, 285 P.3d 303, 311 (Ariz. 2012). A jury found him guilty of that crime, and the court set the trial's aggravation phase at which the jury would determine Van Winkle's eligibility for a

---

[1] Van Winkle has not sought authorization for habeas counsel to represent him in state court.

death sentence.² (R.O.A. 176.)

In conjunction with the aggravation phase, the court instructed the jury that if it did not find at least one aggravating circumstance, the court would either sentence Van Winkle to life in prison without the possibility of release, or to life with the possibility of "release after 25 years." (R.T. 11/12/09 at 21.) The jury found three aggravating circumstances: Van Winkle had previously been convicted of a serious offense (attempted murder) and had committed the present offense "in an especially heinous . . . or depraved manner," while detained in the county jail.³ (*Id.* at 49; R.O.A. 186.) As a result, the trial court set the trial's penalty phase, at which the jury would decide whether any "mitigating circumstances [were] sufficiently substantial to call for leniency" from a death sentence under A.R.S. § 13-703(E) (West 2008). (R.T. 11/12/09 at 51–52.)

Before the penalty phase commenced, Van Winkle objected to the court instructing the jury that he could receive a life sentence with possibility of release after 25 years because he was ineligible for parole. (Petition for Review, Appendix D at 207.) The court overruled the defense objection. (R.T. 11/12/09 at 5–6.)

At the start of the penalty phase, the court instructed the jury that Van Winkle asserted three mitigating circumstances: the murder was a reaction to the stress from the incessant "danger of death or serious injury" within the high-security jail, the jail had insufficient "security procedures" to thwart jail violence between inmates, and "[i]mmersion in 'prison culture'" left inmates "with few" proper ways to manage violence or threats thereof. (R.T. 11/16/09 at 7.) The court also instructed the jury that it could "consider anything related to [Van Winkle]'s character, propensity, history or record, or circumstances of the offense" as mitigation. (*Id.* at 7–8.)

At the penalty phase, the parties offered evidence that Van Winkle had beaten an inmate charged with sex offenses, after he had beaten to death the victim in his murder

---

² *See* A.R.S. § 13-703(E) (prohibiting imposition of a death sentence unless the jury finds at least one aggravating circumstance listed in § 13-703(F)).

³ *See* A.R.S. § 13-703(F)(2), (6), and (7)(a) (West 2008).

- 2 -

case. (*Id.* at 40–46, 52, 59, 70–72, 76–77.) The State argued, in closing, that the jury should sentence Van Winkle to death based on Van Winkle's history of violence, stressing that the jail was dangerous, in part, because of him. (*Id.* at 132–35, 138–39.)

In its final instructions to the jury, the trial court told the jury to decide whether Van Winkle should be sentenced to death. (*Id.* at 151.) The court instructed the jury that if it did not sentence him to death, the court would decide whether he would be sentenced to life "with or without the possibility of parole." (*Id.*) The jury sentenced Van Winkle to death. (R.O.A. 207 and 214.) On direct appeal, Van Winkle did not include a *Simmons* claim. *See* Opening and Reply Briefs. The Arizona Supreme Court affirmed. *VanWinkle II*, 285 P.3d at 311–17.

On March 19, 2013, Van Winkle petitioned for postconviction relief, again without asserting a *Simmons* claim. (R.O.A. 239 and 319.) The United States Supreme Court later held in *Lynch v. Arizona* (*Lynch II*) that possible clemency or a future statute allowing parole did not "diminish[ ] a capital defendant's right to inform a jury of his parole ineligibility." 578 U.S. 613, 615 (2016).[4] In light of *Lynch II*, Van Winkle amended his postconviction relief petition to include a claim that the trial court erred by failing to instruct the jury about his parole ineligibility under *Simmons* and *Lynch II*. (R.O.A. 453 at 3–7.) He asserted that *Lynch II* was a "substantive change in the law." (*Id.* at 3, 5–6.)

The State, however, argued that *Lynch II* was not a significant change in the law, and that Van Winkle's *Simmons*/*Lynch II* claim should be found precluded because it was not raised on appeal. (R.O.A. 460 at 5–8.) The postconviction review court found the claim precluded and denied relief. (R.O.A. 472 at 3–4, 7.) The Arizona Supreme Court denied review. (Petition for Review at 20, 26–41; ASC Minute Letter.)

Van Winkle then commenced this case and alleged as Claim 6 that the trial court had violated *Simmons* and *Lynch II* by not instructing the jury of his parole ineligibility, but instead instructing that he might be eligible for release after serving 25 years. (Doc. 25 at 149–52.) On February 21, 2023, Van Winkle moved to stay this habeas case under

---

[4] *Lynch II* reversed *State v. Lynch* (*Lynch I*), 357 P.3d 119 (Ariz. 2015).

*Rhines v. Weber*, 544 U.S. 269 (2005), until he has exhausted other habeas claims, not including Claim 6, in state court. (Doc. 123.) The next day, the United States Supreme Court held in *Cruz v. Arizona* (*Cruz II*) that *Lynch II* was a significant change in the law "for purposes of [Arizona Rule of Criminal Procedure] 32.1(g)." 598 U.S. —, 143 S. Ct. 650, 655 (2023).[5] Shortly thereafter, Van Winkle amended his motion to add Claim 6. (Doc. 126 at 14–15, 17, 20–21.) The amended motion is fully briefed. (Docs. 132 and 134.)

## II.   APPLICABLE LAW

### A.   *Rhines* Stay

Under *Rhines*, a court may, in limited circumstances, stay a habeas petition containing both exhausted and unexhausted claims to allow the petitioner the opportunity to exhaust his unexhausted claims, before returning to the habeas court "for review of the perfected petition." 544 U.S. at 271–79. A *Rhines* stay is proper only if the petitioner shows (1) "good cause" for the failure to exhaust, (2) the unexhausted claim is "potentially meritorious," and (3) the petitioner did not "engage[] in intentionally dilatory litigation tactics." *Id.* at 277–78. Because a *Rhines* stay applies solely to mixed habeas petitions, petitions containing both exhausted and unexhausted claims, this Court must first decide whether any of the claims that Van Winkle seeks to exhaust are unexhausted. *See King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009); *see also*, *e.g.*, *Bearup v. Shinn*, No. CV-16-03357-PHX-SPL (D. Ariz. Jan. 26, 2023) (Doc. 150).

### B.   Exhaustion

A petitioner has not exhausted a habeas claim in state court "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). A claim is exhausted if (1) it has been fairly raised to the highest state court with jurisdiction to consider it or (2) no state remedy remains available to exhaust the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). A state remedy is unavailable if the state's procedural rules bar a state court from considering the claim, resulting in the claim being "technically exhausted." *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (citing *Gray*

---

[5] *Cruz II* vacated and remanded *State v. Cruz* (*Cruz I*), 487 P.3d 991 (Ariz. 2021).

*v. Netherland*, 518 U.S. 152, 161 (1996)); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (citing 28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 125–26 n.28 (1982)) (claims defaulted in state court); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007).

Hence, a *Rhines* stay should not be granted if a petition contains only actually and technically exhausted claims. *See*, *e.g.*, *Pritchett v. Gentry*, No. 2:17-cv-01694-JAD-DJA, 2022 WL 4366996, at *4 (D. Nev. Sept. 21, 2022) (noting "[t]he point of [the] stay is to allow" presentment of "unexhausted claims" in state court); *White v. Ryan*, No. CV-09-2167-PHX-FJM (LOA), 2010 WL 1416054, at *12 (D. Ariz. Mar. 16, 2010) (denying *Rhines* stay of a petition that has only exhausted or technically exhausted claims).

### C. Arizona's Bars on Successive Postconviction-Relief Claims

Arizona Rule of Criminal Procedure 32 governs postconviction review for those convicted and sentenced following a trial. Ariz. R. Crim. P. 32.1. Grounds for postconviction relief under Rule 32.1, include a constitutional violation, Ariz. R. Crim. P. 32.1(a), and "a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence," *id.* at (g).

Rule 32.2(a) precludes relief if a ground was "finally adjudicated on the merits in an appeal or in any previous post-conviction proceeding," Ariz. R. Crim. P. 32.2(a)(2), or was "waived at trial or on appeal, or in any previous post-conviction proceeding," unless the right at issue could "only be waived knowingly, voluntarily, and personally by the defendant," *id.* at (3). Preclusion under Rule 32.2(a)(3) does not apply to constitutional violations raised pursuant to Rule 32.1(g). Ariz. R. Crim. P. 32.2(b).

### III. DISCUSSION

Van Winkle argues that Claim 6, as well as Claims 2(C) and (D), 4, and 10, are unexhausted such that a *Rhines* stay is appropriate. (Doc. 126 at 6–24.) Respondents argue that all but Claims 6 and 10 are technically exhausted. (Doc. 132 at 3–7.) But a *Rhines* stay may be granted if at least one claim satisfies the standard. "*Rhines* does not state, or suggest, that every unexhausted claim in the petition must satisfy, individually, the 'good cause' and potentially meritorious' requirements before a stay is permitted." *Byford v.*

*Baker*, No. 3:11-cv-00112-JCM-WGC, 2013 WL 431340, at *2 (D. Nev. Feb. 1, 2013); *accord*. *Reyes v. Lizzaraga*, No. 18-cv-04388-EMC, 2022 WL 3083712, at *4 (N.D. Cal. Aug. 3, 2022). The Ninth Circuit has held that to obtain a *Rhines* stay, a petitioner must show "that at least one" unexhausted claim is potentially meritorious. *Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) (citing *Rhines*, 544 U.S. at 277). Thus, "[i]f a stay is warranted with respect to any single claim, [this Court] need not conduct a claim-by-claim analysis regarding the remaining claims." *Archanian v. Gittere*, No. 3:19-cv-00177-APG-CLB, 2019 WL 6499113, at *2 (D. Nev. Dec. 3, 2019).

### A. *Claim 6 Is Unexhausted*

Respondents do not dispute that Claim 6 is unexhausted under Rules 32.1(g) and 32.2(b) in light of *Cruz II*. (Doc. 126 at 14–15, 17.) Van Winkle raised his *Simmons/Lynch II* claim in his second amended postconviction-relief petition. (R.O.A. 453 at 3–7.) The postconviction-review court implicitly found that the claim concerned a constitutional violation under Rule 32.1(a) by holding it precluded under Rule 32.2(a)(3) and not reaching its merits. (R.O.A. 472 at 3–4.) *Cruz II*, however, held that *Lynch II*—which flows from *Simmons*—was a significant change in the law "for purposes of Rule 32.1(g)." 143 S. Ct. at 655. Thus, Claim 6 has been rendered unexhausted, and Van Winkle may now seek review in a successive postconviction-review petition under Rules 32.1(g) and 32.2(b). *See* 28 U.S.C. § 2254(c); c*f. Newman v. Norris*, 597 F.Supp.2d 890, 895 (W.D. Ark. 2009) (finding claim, on which state courts had ruled, no longer exhausted in light of new evidence); *Rodriguez v. Uhler*, 15cv09297 (GBD) (DF), 2017 WL 9807068, at *8 (S.D.N.Y. Oct. 23, 2017) (finding claim no longer exhausted because state appellate court had vacated denial of the claim).

### B. *Good Cause and Absence of Dilatory Litigation Tactics*

"The caselaw concerning what constitutes 'good cause' under *Rhines* has not been developed in great detail." *Dixon*, 847 F.3d at 720. This Court must decide whether good cause exists "in light of the Supreme Court's instruction in *Rhines* that th[is Court] should only stay mixed petitions in 'limited circumstances,'" remaining "mindful that AEDPA

aims to" promote finality and the exhaustion of claims "in state court before filing in" this Court. *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (quoting *Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005); citing *Rhines*, 544 U.S. at 276–77).

The "good cause" standard does not demand "extraordinary circumstances." *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (citing *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005)). It "turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" the failure to exhaust the claim in state court. *Blake*, 745 F.3d at 982; *see also Beets v. McDaniel*, No. 2:04-CV-00085-KJD-GWF, 2009 WL 212424, at *5 (D. Nev. Jan. 23, 2009) (noting that "most courts have concluded that the 'good cause' necessary for stay and abeyance is either the same as or more generous than the showing needed for 'cause' to excuse a procedural default"). "[A] bald assertion" will not suffice. *Blake*, 745 F.3d at 982.

Respondents do not dispute Van Winkle has shown good cause for failing to have exhausted Claim 6 in light of *Cruz II*. Nor do they argue that Van Winkle has engaged in dilatory litigation tactics. (Doc. 126 at 17, 20–21.) Initially, he exhausted Claim 6 by presenting it on postconviction review, but the court, under then-existing state law, found it precluded under Rules 32.1(a) and 32.2(a)(3). (R.O.A. 472 at 3–4; Petition for Review; ASC Minute Letter.) It remained exhausted for purposes of his habeas petition and stay motion. The decision in *Cruz II*—issued the day after Van Winkle's motion for stay—rendered Claim 6 unexhausted. Van Winkle then promptly amended the motion for stay to add Claim 6 based on *Cruz II*. In short, good cause to grant the stay and the absence of dilatory litigation tactics have been established.

C.     ***Potential Merit***

Van Winkle argues that Claim 6 is potentially meritorious because the trial court committed *Simmons/Lynch II* error. (Doc. 126 at 14–15.) A claim has potential merit unless "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005); *see Rhines*, 544 U.S. at 277 (describing the "potential merit" standard as not onerous); *see also Dixon*, 847 F.3d at 722

(using that standard because "principles of comity and federalism demand" that courts do not "rul[e] on" a claim's merits before fairly presented to the state courts).

Claim 6 is potentially meritorious. Under *Simmons*, when a capital defendant's "future dangerousness is at issue, and state law" bars that defendant's "release on parole, due process requires that the sentencing jury be informed" of that bar. 512 U.S. at 156. And under *Lynch II*, possible clemency or a future statute allowing parole does not "diminish[ that] defendant's right to inform a jury of his parole ineligibility." 578 U.S. at 615. Van Winkle has offered evidence to show that the trial court violated *Simmons* and *Lynch II*. First, his future dangerousness was at issue when his history of violence was introduced, including after he committed the murder at issue in this case. (R.T. 11/12/09 at 49; R.T. 11/16/09 at 132–135, 138–39.)

Second, Van Winkle was ineligible for parole at the time of his 2009 sentencing. He had three possible sentences for first-degree murder: death, natural life, or life. A.R.S. § 13-703(A) (West 2008). A natural life sentence would have made him ineligible for parole. *Id*. A life sentence did not include the possibility of release on parole after serving 25 years because at that time, parole was available only to "persons who commit[ted] felony offenses before January 1, 1994." A.R.S. § 41-1604.09(I) (West 2008). Van Winkle, in sum, was parole ineligible at the time of his sentencing.

Finally, the trial court not only failed to tell the jury that Van Winkle was ineligible for parole, it told the jury at the aggravation and penalty phases, that if not sentenced to death, the court could sentence him to life in prison with or without the possibility of release after 25 years. (R.T. 11/12/09 at 21; R.T. 11/16/09 at 151.) Thus, Van Winkle's *Simmons/Lynch II* claim is potentially meritorious.

Respondents do not argue the contrary. Instead, they argue that any error was harmless because Van Winkle would still have posed a risk of future dangerousness if imprisoned for life. (Doc. 132 at 7–9.) "[T]he beneficiary of a constitutional error" has the burden to prove harmless error by "prov[ing] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S.

18, 24 (1967); *see also State v. Henderson*, 115 P.3d 601, 607, ¶ 18 (Ariz. 2005) (citing *State v. Bible*, 858 P.2d 1152, 1191 (Ariz. 1993)) (same). But "[i]t is not clear whether *Simmons* error is subject to harmless error review." *State v. Escalante-Orozco*, 386 P.3d 798, 830, ¶ 125 (Ariz. 2017), *abrogated on other grounds by State v. Escalante*, 425 P.3d 1078 (Ariz. 2018). Although the United States Supreme Court has reviewed "a wide range of errors" for harmless error "and has recognized that most constitutional errors can be harmless," *Arizona v. Fulminante*, 499 U.S. 279, 306–07 (1991) (citing cases), the Supreme Court has not applied harmless error to *Simmons* errors, *Escalante-Orozco*, 386 P.3d at 830, ¶ 125 (citing *Lynch II*, 136 S. Ct. at 1818–20; *Kelly v. South Carolina*, 534 U.S. 246, 257–58 (2002); *Shafer v. South Carolina*, 532 U.S. 36, 54–55 (2001); *Simmons*, 512 U.S. at 171)). And the Supreme Court did not do so in *Cruz II*. 143 S. Ct. 650.

Arizona courts, moreover, have not determined whether they may review *Simmons* error for harmless error. *See State v. Rushing*, 404 P.3d 240, 250, ¶ 42 (Ariz. 2017) ("Even if we assume a *Simmons* error can be harmless, the [s]tate has not met its burden" to prove that the *Simmons* error was harmless to Rushing); *Escalante-Orozco*, 386 P.3d at 830, ¶ 126 (declining to "decide whether a *Simmons* error [could] ever be harmless" because the state did not prove that it was harmless to Escalante-Orozco). Hence, this Court cannot conclude that if the state court found that a *Simmons/Lynch II* error occurred, such error would be subject to harmless-error review. Claim 6 therefore remains potentially meritorious; it is not "vague, conclusory or patently frivolous." *See Cruz v. Mitchell*, No. 13-cv-2792-JST, 2015 WL 78779 at *3 (N.D. Cal. Jan. 5, 2015). Van Winkle "has satisfied the less demanding standard required to obtain a stay under *Rhines*," *see Pandeli v. Shinn*, No. CV-17-01657-PHX-JJT, 2022 WL 16855196, at *5 (D. Ariz. Nov. 10, 2022) (citing *Dixon*, 847 F.3d at 723), by presenting evidence of a *Simmons*/*Lynch II* error.

…

…

…

…

## VI. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Van Winkle's amended motion to stay and abey (Doc. 126), and thus **staying** and **abeying** this case pending the resolution of Van Winkle's state-court proceedings.

**IT IS FURTHER ORDERED** that starting from this Order's filing date, the parties shall file a joint report every **90 days** on the status of Van Winkle's successive state postconviction-review proceedings and no later than **7 court days** after entry of judgment in those proceedings, shall file a joint notice informing this Court.

Dated this 9th day of May, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge